IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLWAVE COMMUNICATIONS, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 12-1701 (RGA) |
| AT&T MOBILITY, LLC and GOOGLE INC., | ) ) ) | |
| Defendants. | ) | |
| CALLWAVE COMMUNICATIONS, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 12-1702 (RGA) |
| SPRINT NEXTEL CORP. and GOOGLE INC., | ) ) ) ) | |
| Defendants. | ) | |
| CALLWAVE COMMUNICATIONS, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 12-1703 (RGA) |
| T-MOBILE USA INC. and GOOGLE INC., | ) ) ) | |
| Defendants. | ) | |
| CALLWAVE COMMUNICATIONS, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 12-1704 (RGA) |
| VERIZON COMMUNICATIONS, INC., CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS and GOOGLE INC., | ) ) ) ) ) | |
| Defendants. | ) | |

| | |
|---|---|
| CALLWAVE COMMUNICATIONS, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 12-1788 (RGA)<br>) |
| AT&T MOBILITY, LLC, BLACKBERRY LTD. and BLACKBERRY CORP., | )<br>)<br>)<br>) |
| Defendants. | ) |
| BROADSOFT INC., | )<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) C.A. No. 13-0711-RGA<br>) |
| CALLWAVE COMMUNICATIONS, LLC, | )<br>)<br>) |
| Defendant. | ) |

## ORDER REGARDING DISCOVERY, INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")

1. **Purpose.** This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

2. **General Provisions.**

a. **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement.

b. **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

c. **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

(i) Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

(ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

d. **Privilege.**

(i) The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

(ii) With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

(iii) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

(iv)     Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Information that contains privileged matter or attorney work product shall be immediately returned and/or destroyed if such information appears on its face to have been inadvertently produced or if notice is provided of inadvertent production.

3.     **Initial Disclosures.** Each party shall disclose:

a.     **Custodians.** The 10 custodians (or as many as practicable if fewer than 10 custodians have relevant and noncumulative information) most likely to have discoverable information in their possession, custody or control. This disclosure is per party across all cases and discovery tracks and is not a per-track requirement. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

b.     **Non-custodial data sources.** A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration.

c.     **Notice.** The parties shall identify any issues relating to:

(i)     Any additional sources of ESI not identified in Schedule A (by type, date, custodian, electronic system or other criteria) that a party asserts are not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

(ii)     Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

(iii)     Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

4.     **Specific E-Discovery Issues.**

a.     **On-site inspection of electronic media.**  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b.     **Search methodology.**

(i)     Nothing in this Order shall require a producing party to utilize any particular collection protocol for any particular population of ESI or entire ESI data source.  For avoidance of doubt, targeted collection may be used to collect potentially relevant documents from an ESI data source.

(ii)     If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose a list of search terms to the requesting party.  Absent a showing of good cause, a requesting party may request no more than 5 additional terms to be used in connection with the electronic searches conducted by the producing party per discovery track.  Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The parties shall meet and confer on excluding information that is not discoverable under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit.

(iii)     Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians.  For emails with attachments (to the extent the parties agree or are ordered to produce emails), the hash value is generated based on the parent/child document grouping.  To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

(iv)    In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate," unless an identical copy of the attachment is contained in the subsequent-in-time version of the email thread that is being produced.

(v)    The producing party shall disclose their list of search terms by July 21, 2014. The requesting party shall respond with its list of additional search terms by July 25, 2014. The parties shall meet and confer by August 1, 2014 to resolve any issues associated with the disclosed search terms.

c.    **Format.**    ESI and non-ESI shall be produced to the requesting party in the formats described in Schedule B. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below in Schedule B) and the revision history as shown within a document management system ("DMS"), if applicable.

d.    **Source Code.**    No provision of this Order affects any inspection of source code that is responsive to a discovery request and may be made available consistent with the protective order governing this case.

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| */s/ Paul Saindon* | */s/ Stephen J. Kraftschik* |
| Jack B. Blumenfeld (#1014)<br>Paul Saindon (#5110)<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>psaindon@mnat.com<br><br>*Attorneys for Google Inc.*<br><br>OF COUNSEL:<br><br>James F. Hurst<br>WINSTON & STRAWN LLP<br>35 West Wacker Drive<br>Chicago, IL 60601-5600<br>(312) 558-5600<br><br>Scott R. Samay<br>Peter Lambrianakos<br>Krishnan Padmanabhan<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166-4193<br>(212) 294-6700 | Karen Jacobs (#2881)<br>Stephen J. Kraftschik (#5623)<br>Eleanor G. Tennyson (#5812)<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>kjacobs@mnat.com<br>skraftschik@mnat.com<br>etennyson@mnat.com<br><br>*Attorneys for Sprint Nextel Corp. (n/k/a Sprint Communications, Inc.)*<br><br>OF COUNSEL:<br><br>Kirk R. Ruthenberg<br>Mark L. Hogge<br>Shailendra K. Maheshwari<br>DENTONS US LLP<br>1301 K Street, N.W., Suite 600<br>Washington, DC 20005 |

| | |
|---|---|
| CONNOLLY GALLAGHER LLP | SEITZ ROSS ARONSTAM & MORITZ LLP |
| */s/ Arthur G. Connolly, III* | */s/ Benjamin J. Schladweiler* |
| Arthur G. Connolly, III (#2667)<br>Connolly Gallagher LLP<br>The Brandywine Building<br>1000 West Street, Suite 1400<br>Wilmington, DE 19801<br>(302) 888-6318<br>aconnolly@connollygallagher.com | Collins J. Seitz, Jr. (#2237)<br>Benjamin J. Schladweiler (#4601)<br>100 S. West Street, Suite 400<br>Wilmington, DE 19801<br>(302) 576-1600<br>cseitz@seitzross.com<br>bschladweiler@seitzross.com |
| *Attorneys for T-Mobile USA, Inc.* | *Counsel for AT&T Mobility LLC* |
| OF COUNSEL: | OF COUNSEL: |
| Ramsey M. Al-Salam<br>Kaustuv M. Das<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099<br>(206) 359-8000 | Joseph P. Zammit<br>FULBRIGHT & JAWORSKI L.L.P.<br>666 Fifth Avenue<br>New York, NY 10103-3198<br>(212) 318-3000<br>jzammit@fulbright.com |
| Kirk R. Ruthenberg<br>Mark L. Hogge<br>Shailendra K. Maheshwari<br>DENTONS US LLP<br>1301 K Street, N.W., Suite 600<br>Washington, DC 20005<br>(202) 408-6400 | Daniel S. Leventhal<br>Brett McKean<br>FULBRIGHT & JAWORSKI L.L.P.<br>Fulbright Tower<br>1301 McKinney, Suite 5100<br>Houston, TX 77010-3095<br>(713) 651-5151 |
| | Mark C. Nelson<br>Matthew P. Harper<br>Daniel A. Valenzuela<br>DENTONS US LLP<br>2000 McKinney Avenue<br>Suite 1900<br>Dallas, TX 75201-1858<br>(214) 259-0900 |

| | |
|---|---|
| SEITZ ROSS ARONSTAM & MORITZ LLP | MORGAN, LEWIS & BOCKIUS LLP |
| */s/ Benjamin J. Schladweiler* | */s/ Jody C. Barillare* |
| Collins J. Seitz, Jr. (#2237)<br>Benjamin J. Schladweiler (#4601)<br>100 S. West Street, Suite 400<br>Wilmington, DE 19801<br>(302) 576-1600<br>cseitz@seitzross.com<br>bschladweiler@seitzross.com | Colm F. Connolly (#3151)<br>Jody C. Barillare (#5107)<br>The Nemours Building<br>1007 North Orange Street, Suite 501<br>Wilmington, Delaware 19801<br>(302) 574-3000<br>cconnolly@morganlewis.com<br>jbarillare@morganlewis.com |
| *Attorneys for Verizon Communications, Inc. and Cellco Partnership d/b/a Verizon Wireless* | *Attorneys for AT&T Mobility LLC, Blackberry Ltd., and Blackberry Corp.* |
| OF COUNSEL:<br><br>Kevin P. Anderson<br>Karin A. Hessler<br>Paul M. Kim<br>WILEY REIN LLP<br>1776 K Street, N.W.<br>Washington, D.C. 20006<br>(202) 719-7000 | Eric Kraeutler<br>John V. Gorman<br>Andrew C. Whitney<br>Squire J. Servance<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>(215) 963-5000 |

9

| | |
|---|---|
| ASHBY & GEDDES, P.A. | PEPPER HAMILTON LLP |
| */s/ John G. Day* | */s/ Edmond D. Johnson* |
| John G. Day (#2403)<br>Tiffany Geyer Lydon (#3950)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>jday@ashby-geddes.com<br>tlydon@ashby-geddes.com<br>amayo@ashby-geddes.com | Edmond D. Johnson (#2257)<br>James Gordon McMillan, III (#3979)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>Wilmington, DE 19899-1709<br>(302) 777-6539<br>johnsone@pepperlaw.com<br>mcmillanj@pepperlaw.com |
| *Attorneys for BroadSoft, Inc.* | *Attorneys for Plaintiff* |
| OF COUNSEL: | OF COUNSEL: |
| Jonathan G. Graves<br>Stephen P. McBride<br>Kevin A. Lake<br>COOLEY LLP<br>One Freedom Square<br>Reston Town Center<br>11951 Freedom Drive<br>Reston, VA 20190-5656<br>(703) 456-8000 | William D. Belanger<br>Noah V. Malgeri<br>Suparna Datta<br>Christopher M. Boundy<br>Leah R. McCoy<br>PEPPER HAMILTON LLP<br>125 High Street<br>19th Fl. High Street Tower<br>Boston, MA 02110-2736<br>(617) 204-5100 |
| | Gregory S. Bishop<br>PEPPER HAMILTON LLP<br>333 Twin Dolphin Drive, Suite 400<br>Redwood City, CA 94065-2133<br>(650) 802-3600 |

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: Aug. 4, 2014

_____
Hon. Richard G. Andrews
United States District Judge

10

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Automatically saved versions of documents and emails.

6. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

7. Voice messages.

8. Instant messages

9. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

10. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

11. Logs of calls made from mobile devices.

12. Server, system, network, or transactional logs.

13. Video and audio recordings.

14. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

15. Data remaining from systems no longer in use that is unintelligible on the systems in use.

16. System data that are typically overwritten in the normal course of business.

## SCHEDULE B
## PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.dat) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** The parties are only obligated to provide the following metadata for all ESI produced to the extent such metadata exists. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, and POD. The metadata file shall be delimited according to the following characters:

   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| POD | Confidentiality designation |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |

| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| NATIVELINK | Native File Link (Native Files only) |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

5. **Color Documents.** Documents containing color need not be produced in color. For the avoidance of doubt, the TIFF images described herein need not be produced in color. Upon the Receiving Party's identification of Documents that it for good cause requests to be produced in color, the Producing Party may produce such Documents in single page, color Joint Photographic Experts Group (.JPEG or .JPG) file format.

6. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

7. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

8. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential

13

within a given document and across the production sets.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **Spreadsheets.** TIFF images of spreadsheets (MS Excel, Google Sheets, Access, Microsoft projects) need not be produced unless redacted, in which instance, spreadsheets may be produced in TIFF format with OCR Text Files. Native copies of spreadsheets shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Paragraph 3. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a spreadsheet has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text. The parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF images are formatted so as to be readable.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Request(s) for Additional Native Files.** If good cause exists to request production of certain files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Paragraph 3. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.